Case 4:15-cv-00460   Document 34   Filed in TXSD on 08/25/16   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
August 25, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOPOIL AB, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-460 |
| | § | |
| M/V ORUC REIS, her engines, | § | |
| boilers, tackle, apparel, etc., | § | |
| in rem, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Claimant V&V Shipping & Transport Co.'s ("V&V") Motion for Summary Judgment or, in the Alternative, Motion to Dismiss Based on Forum Non Conveniens (Doc. 20) and Plaintiff's Motion for Summary Judgment (Doc. 22). The court has considered the motions, the responses, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that V&V's motion be **DENIED** and Plaintiff's motion be **GRANTED**.

**I. Case Background**

Plaintiff filed this admiralty action pursuant to the Commercial Instruments and Maritime Liens Act[2] ("CIMLA") to arrest the M/V ORUC REIS to enforce a maritime lien for unpaid bunkers.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 5, Order Dated Feb. 20, 2015.

[2] See 46 U.S.C. §§ 31301-31343.

A.  **Factual Background**

Plaintiff is a Swedish company in the business of supplying bunkers to ships.³ V&V is the owner of the M/V ORUC REIS and is domiciled in the Republic of Turkey, the M/V ORUC REIS's base of operations.⁴ The M/V ORUC REIS sails under the flag of the Republic of Panama.⁵

On October 29, 2014, Copenship Bulkers A/S ("Copenship"), a Danish time-chartered operator, placed an order with Plaintiff for the purchase of 90 metric tons of intermediate fuel oil (IFO) 380, 300 metric tons of IFO 380, and 30 metric tons of marine gas oil (MGO) (collectively, the "bunkers") to be delivered to M/V ORUC REIS at the Port of Gothenburg in the Kingdom of Sweden ("Sweden").⁶ Plaintiff sent Copenship a copy of the Order Confirmation, which stated that it incorporated terms and conditions of sale (the "Terms and Conditions") that were available

---

   ³   Doc. 1, Pl.'s Orig. Verified Compl. p. 2; Doc. 22-2, Ex. B to Pl.'s Mot. for Summ. J., Pl.'s Statement of Undisputed Material Facts p. 1; Doc. 26, V&V's Resp. to Statement of Undisputed Material Facts p. 1.  Without citing evidence, V&V states, in its motion, that Plaintiff was not known to V&V or to any representative of the M/V ORUC REIS.  Doc. 20, V&V's Mot. for Summ. J. or, in the Alternative, Mot. to Dismiss Based on Forum No Conveniens ("V&V's Mot.") p. 9.

   ⁴   See V&V's Mot. p. 12.  V&V cites no evidence in support of the claims of ownership and domicile, but Plaintiff does not dispute these facts.

   ⁵   Doc. 1, Pl.'s Orig. Verified Compl. p. 2.

   ⁶   See id. p. 2; Doc. 1-1, Ex. 1 to Pl.'s Orig. Verified Compl., Order Confirmation; Doc. 22-1, Ex. A to Pl.'s Mot. for Summ. J., Decl. of Mikael Eriksson p. 2 (unnumbered); Doc. 22-2, Ex. B to Pl.'s Mot. for Summ. J., Pl.'s Statement of Undisputed Material Facts p. 1; Doc. 26, V&V's Resp. to Statement of Undisputed Material Facts p. 1.

on Plaintiff's website.[7]  The Order Confirmation was addressed to Copenship and, above the name of the contact person, read "Master/Owners/Charterers/Managers/Operators of Oruc Reis."[8]  V&V was not sent a copy of the Order Confirmation.[9]

The Terms and Conditions defined "Buyer" as "the person or company placing the order . . . as well as the owner of the vessel bunkered or to be bunkered, bareboat charterer or manager of such vessel or anybody else for the account of whom the vessel is bunkered."[10]  In the section on title to the bunkers, the Terms and Conditions stated that Plaintiff had the right to:

> arrest/attach the supplied vessel and/or its sister ships and/or any other assets of the Buyer . . . and [Plaintiff] shall have a lien on the vessel for the supply and shall be entitled to arrest the vessel and claim payment against the vessel at any port if [Plaintiff] is entitled to do so either pursuant to this clause alone, or to the law of the flag state of the vessel, or to the law of the place of arrest, or to the law of the place of the supply or to the laws of United States of America.[11]

---

[7] See Doc. 1-1, Ex. 1 to Pl.'s Orig. Verified Compl., Order Confirmation; Doc. 22-1, Ex. A to Pl.'s Mot. for Summ. J., Decl. of Mikael Eriksson p. 2 (unnumbered); Doc. 22-2, Ex. B to Pl.'s Mot. for Summ. J., Pl.'s Statement of Undisputed Material Facts p. 1; Doc. 26, V&V's Resp. to Statement of Undisputed Material Facts p. 1.

[8] See Doc. 1-1, Ex. 1 to Pl.'s Orig. Verified Compl., Order Confirmation; Doc. 22-1, Ex. A to Pl.'s Mot. for Summ. J., Decl. of Mikael Eriksson p. 2 (unnumbered).

[9] See Doc. 26, V&V's Resp. to Statement of Undisputed Material Facts p. 4; Doc. 33, Pl.'s Resp. to V&V's Add'l Undisputed Material Facts p. 2 (unnumbered).

[10] Doc. 1-1, Ex. 2 to Pl.'s Orig. Verified Compl., Terms & Conditions p. 1 (unnumbered).

[11] Doc. 1-1, Ex. 2 to Pl.'s Orig. Verified Compl., Terms & Conditions p. 6 (unnumbered).

Plaintiff delivered the bunkers in the approximate quantities ordered on October 31, 2014.[12] The ship's master signed the Delivery Receipt in acknowledgment of delivery of fuel in the quantity stated on the receipt and applied the M/V ORUC REIS master seal.[13] The Delivery Receipt did not reference the terms and conditions of sale.[14] On November 3, 2014, Plaintiff invoiced Copenship in the amount of $222,378.98.[15] The Invoice, like the Order Confirmation, was addressed to Copenship but, separately from the address, stated "Master/Owners/Charterers/Managers/Operators of Oruc Reis."[16] Neither Copenship nor any other party made payment on the Invoice.[17]

## B. Procedural Background

On February 19, 2015, Plaintiff filed the verified complaint

---

[12] See Doc. 1-1, Ex. 3 to Pl.'s Orig. Verified Compl., Delivery Receipt; Doc. 22-1, Ex. A to Pl.'s Mot. for Summ. J., Decl. of Mikael Eriksson p. 3 (unnumbered); Doc. 22-2, Ex. B to Pl.'s Mot. for Summ. J., Pl.'s Statement of Undisputed Material Facts p. 3; Doc. 26, V&V's Resp. to Statement of Undisputed Material Facts p. 2.

[13] See Doc. 1-1, Ex. 3 to Pl.'s Orig. Verified Compl., Delivery Receipt.

[14] See id.

[15] See Doc. 1-1, Ex. 4 to Pl.'s Orig. Verified Compl., Invoice; Doc. 22-1, Ex. A to Pl.'s Mot. for Summ. J., Decl. of Mikael Eriksson p. 3 (unnumbered); Doc. 22-2, Ex. B to Pl.'s Mot. for Summ. J., Pl.'s Statement of Undisputed Material Facts p. 3; Doc. 26, V&V's Resp. to Statement of Undisputed Material Facts p. 2.

[16] See Doc. 1-1, Ex. 4 to Pl.'s Orig. Verified Compl., Invoice; Doc. 22-2, Ex. B to Pl.'s Mot. for Summ. J., Pl.'s Statement of Undisputed Material Facts p. 4; Doc. 26, V&V's Resp. to Statement of Undisputed Material Facts p. 2.

[17] See Doc. 1, Pl.'s Orig. Verified Compl. p. 4; Doc. 22-1, Ex. A to Pl.'s Mot. for Summ. J., Decl. of Mikael Eriksson p. 4 (unnumbered). For purposes of its motion, V&V does not dispute the allegation of nonpayment. See Doc. 20, V&V's Mot. p. 3.

pursuant to Federal Rule of Civil Procedure 9(h) and moved for the issuance of an in rem warrant for the arrest of the M/V ORUC REIS.[18] Plaintiff claimed that the sum of $222,378.98 was outstanding and requested that security in the amount of 150 percent of that amount ($333,568.47) be entered into the registry of the court for the release of the M/V ORUC REIS.[19] The court granted the motion and issued a warrant for the arrest of the M/V ORUC REIS.[20] On February 21, 2015, the U.S. Marshal served the warrant and arrested the vessel.[21]

On March 4, 2015, V&V, the registered owner of the M/V ORUC REIS, filed an unopposed motion to deposit $333,570 into the registry of the court as security for the release of the M/V ORUC REIS.[22] The court granted the motion; V&V deposited the funds in the registry of the court; and Plaintiff provided written authorization for the vessel's release.[23]

---

[18]   See Doc. 1, Pl.'s Orig. Verified Compl.; Doc. 3, Ex Parte Mot. for Arrest of M/V ORUC REIS.

[19]   See Doc. 1, Pl.'s Orig. Verified Compl. p. 4; Doc. 3, Ex Parte Mot. for Arrest of M/V ORUC REIS p. 2.

[20]   See Doc. 6, Order Dated Feb. 20, 2015; Dkt. Entry Dated Feb. 20, 2015.

[21]   See Doc. 7, Process Receipt & Return; Doc. 8, Process Receipt & Return.  Without citing evidence, V&V states, in its motion, that the M/V ORUC REIS was sailing under a different charter with different bunkers at the time of its arrest.  Doc. 20, V&V's Motion p. 9.

[22]   See Doc. 9, V&V's Unopposed Mot. for Ord. to Deposit Funds into the Registry of the Ct.

[23]   See Doc. 10, Order Dated Mar. 4, 2015; Doc. 11, Not. of Release of the M/V ORUC REIS; Dkt. Entry Dated Mar. 4, 2015; Doc. 12, Process Receipt & Return.

On March 24, 2015, V&V filed a claim to the M/V ORUC REIS as owner of the vessel.[24] A day later, V&V filed an answer to the complaint and raised six defenses: (1) the CIMLA does not apply to the claim or entitle Plaintiff to a maritime lien against the M/V ORUC REIS; (2) U.S. general maritime law does not apply to the claim against the M/V ORUC REIS; (3) Plaintiff does not have a maritime lien pursuant to U.S. general maritime law; (4) the court should not exercise jurisdiction over the claim pursuant to the doctrine of forum non conveniens; (5) the court lacks subject matter jurisdiction; and (6) Plaintiff has no maritime lien against the M/V ORUC REIS because neither the vessel nor its owner were involved in the order and supply of the bunkers at issue.[25] V&V also asserted that Plaintiff failed to state a claim upon which relief could be granted.[26]

On June 8, 2015, the court held a scheduling conference and entered a docket control order.[27] Six months later, the parties filed the pending dispositive motions.[28] The court addresses those motions now.

---

[24]   See Doc. 13, V&V's Statement of Rt. or Int.

[25]   See Doc. 14, Ans. of Claimant V&V pp. 3-4.

[26]   See id. p. 1.

[27]   See Doc. 16, Min. Entry Dated June 8, 2015; Doc. 17, Dkt. Control Order.

[28]   See Doc.20, V&V's Mot.; Doc. 22, Pl.'s Mot. for Summ. J.

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (1992). If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)). Cross-motions for summary judgment are separately

considered under this rubric.  See <u>Shaw Constructors v. ICF Kaiser Eng'rs</u>, 395 F.3d 533, 538-39 (5th Cir. 2004).  Each movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, and the court views the evidence in favor of each nonmovant.  See <u>id.</u>; <u>Tidewater Inc. v. United States</u>, 565 F.3d 299, 302 (5th Cir. 2009)(quoting <u>Ford Motor Co. v. Tex. Dep't of Transp.</u>, 264 F.3d 493, 498 (5th Cir. 2001)).

### III. Analysis

Both parties filed motions for summary judgment.  V&V argues that the law of Sweden applies to contract formation and prohibits the enforcement of the Order Confirmation's choice-of-law provision against the M/V ORUC REIS, in rem, or against V&V, in personam, for the purpose of establishing a maritime lien to recover the cost of the bunkers.  Plaintiff agrees that Swedish law applies to the issue of contract formation but contends that the choice-of-law provision selecting U.S. law was properly incorporated and provides Plaintiff with the right to enforce a maritime lien against the M/V ORUC REIS for the supply of bunkers.  Alternatively, V&V argues that the action should be dismissed pursuant to the theory of forum non conveniens in favor of prosecution in Sweden.

A recent Fifth Circuit ruling directs the court's resolution of the motions at hand.  On April 1, 2016, after the briefing on the pending motions in this case closed, the Fifth Circuit issued <u>World Fuel Services Singapore PTE, Limited v. BULK JULIANA M/V</u>, 822

F.3d 766 (5th Cir. 2016), pet. for cert. filed, ___ U.S.L.W. ___ (June 30, 2016)(No. 16-26), an opinion so directly on point that this court need not discuss any other legal authority.

In BULK JULIANA M/V, a Singapore company entered into a contract with a German charterer to supply bunkers in Singapore to the chartered vessel that was sailing under the Panamanian flag and was beneficially owned by a U.S. company and operated and managed by a U.S. company. See id. at 767. The charterer ordered bunkers from the Singapore supplier, which confirmed the order via email sent to the charterer. Id. at 768.

The email stated that all sales were on the credit of the vessel, and the buyer was presumed to have authority to bind the vessel with a maritime lien. Id. Additionally, the email stated that it incorporated by reference the bunker supplier's general terms and conditions and provided a website address where they could be found. Id. Among the terms and conditions were three that the court found relevant to the case: (1) a provision on the incorporation of the terms and conditions; (2) a provision providing that the products were sold on the credit of the receiving vessel as well as the buyer's promise to pay, that sales were made to the owner of the vessel in addition to the entity listed as the buyer, and that the buyer warranted that the seller would have and could assert a maritime lien for nonpayment; and (3) that the terms and conditions and the sales transaction "shall be

governed by the General Maritime Law of the United States[, which] shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action." Id. at 768-69.  The court found no indication in the record that the charterer ever objected to or inquired about the terms and conditions.  See id. at 769.

When the bunkers were delivered, the master/chief engineer of the vessel signed the delivery confirmation and applied the vessel's stamp. Id. The bunker supplier issued an invoice for the sale that named the vessel, its owners, and the charterer. See id. The charterer never remitted payment. Id.

Nine months after delivery of the bunkers, the charterer found the vessel at the Port of New Orleans and applied for its arrest. See id. The court issued a warrant that was served and enforced. See id. The owner posted a security bond for the release of the vessel. Id. The bunker supplier also named the charterer as a defendant but later dismissed the charterer because it was insolvent. See id. The owner filed an answer challenging the validity of the maritime lien and the arrest of the vessel. See id.

The court addressed two issues that provide guidance for the motions before this court: (1) whether, under Singapore law, the contract's terms and conditions were validly incorporated into the agreement and were enforceable; and (2) whether the charterer had

10

the authority to bind the vessel in rem even though the owner was not a party to the bunker supply contract.  Id. at 770.

The parties agreed that Singapore law applied to contract formation; and, thus, the court did not address choice of law based on maritime principles.  See id. at 771.  The court moved to the issue of incorporation.  See id.  Relying on the uncontroverted opinion of the charterer's expert on Singapore law, the court affirmed the district court's finding that the U.S. choice-of-law provision was validly incorporated into the contract.  See id. at 771-72.  The court found that the expert's testimony about the ready availability of the terms and conditions and about the prevalence of the practices evidenced in the terms and conditions was sufficient to overcome the fact that neither the vessel nor the vessel's owner was a party to the bunker supply confirmation email resulting in a lack of access and/or awareness of the terms and conditions.  See id. at 772.

On the issue of whether the charterer had the authority to bind the vessel in rem even though its owner was not a party to the bunker supply contract, the court relied on its prior case, Liverpool and London Steamship Protection and Indemnity Association v. QUEEN OF LEMAN M/V, 296 F.3d 350 (5th Cir. 2002).  See BULK JULIANA M/V, 822 F.3d at 773.  That opinion, explained the BULK JULIANA M/V court, "unabashedly enforced, against a non-party to the contract, a maritime lien for vessel insurance, which was

11

created under the auspices of a choice of law clause." Id. at 773. The court rejected the owner's attempt to distinguish that case as involving a maritime lien imposed by contract between the insurer and the vessel's owner and later enforced against a subsequent owner of the vessel:

> From the standpoint of the third party's lack of knowledge and failure to acquiesce in the creation of the debt, however, we see no principled distinction from this case. Nor have other circuits, which have cited QUEEN OF LEMAN with approval in the course of enforcing maritime necessaries liens authorized pursuant to enforcement of choice of law clauses calling for U.S. law.

Id.

The Fifth Circuit adopted the rationale of the Ninth Circuit opinion in Trans-Tec Asia v. M/V HARMONY CONTAINER, 518 F.3d 1120 (9th Cir. 2008), and of the Fourth Circuit in Triton Marine Fuels Limited v. M/V PACIFIC CHUKOTKA, 575 F.3d 409 (4th Cir. 2009). See BULK JULIANA M/V, 822 F.3d at 773. "[W]e do not believe the majority of circuit courts have erred legally or practically when they have found it appropriate to enforce maritime choice of U.S. law clauses, and the resultant [CIMLA] liens, in these cases." Id. The court credited ships as "by their nature internationally oriented, sophisticated, and fully able to protect themselves contractually in their dealing with time charterers from any perceived unfairness by the possible enforcement of maritime necessaries liens in U.S. ports." Id. The court concluded that the "time charterer had authority to bind the vessel in rem for its

purchase of bunkers, and the lien [was] enforceable in U.S. courts." Id.

As in BULK JULIANA M/V, the case before this court involves all foreign points of contact except the presence of the M/V ORUC REIS in this jurisdiction at the time of its arrest. Multiple other material facts in this case are so similar to the facts of BULK JULIANA M/V as to make the Fifth Circuit's decision controlling.

Here, a Swedish company entered into a contract with a Danish charterer to supply bunkers in Sweden to the M/V ORUC REIS, a vessel registered in Panama that had a base of operations in Turkey and a Turkish owner. Copenship ordered bunkers from the Swedish company, which sent an Order Confirmation to Copenship and therein stated that the Terms and Conditions available on Plaintiff's website were incorporated into the sales contract. The Terms and Conditions defined Buyer to include the vessel owner. They also included a choice-of-law provision stating that Plaintiff could arrest the vessel in any port and have a lien on the vessel if entitled to do so under the law of any of several jurisdictions including the United States. Copenship never objected to the terms.

When the bunkers were delivered, the master of the M/V ORUC REIS signed and stamped the delivery confirmation. Plaintiff issued Copenship an invoice that was never paid. About three and

13

one-half months after delivery, Plaintiff applied for an arrest warrant in order to exercise a maritime lien on the M/V ORUC REIS when the ship sailed into this jurisdiction. The court signed the warrant, and it was served and enforced. V&V posted security for the ship's release and filed an answer.

The parties agree that the law of Sweden applies to issues of contract formation. Therefore, the court need not address choice of law based on maritime principles. Rather, in following the lead of BULK JULIANA M/V, the court examines whether, under the law of Sweden, the contract's terms and conditions were validly incorporated into the agreement and were enforceable.

Plaintiff's expert, Jörgen Almelöv ("Almelöv"), testified that the law of Sweden allowed parties to incorporate contract terms from other documents and did not require that the incorporated terms actually be reviewed to be effective.[29] Almelöv stated that Swedish law would find it sufficient that the incorporated terms were easily accessible, as when on the company's website.[30] Even merely the lack of objection to the incorporated terms would be considered sufficient to find that terms were validly incorporated by reference, according to Almelöv.[31] The expert noted that this bunker sales contract involved professional

---

[29] Doc. 22-3, Ex. C to Pl.'s Mot. for Summ. J., Expert Legal Opinion of Almelöv p. 5 (unnumbered).

[30] See id.

[31] See id. p. 6 (unnumbered).

entities working in international shipping where the use of such terms and conditions are common.[32]

Almelöv also opined that contracting parties could agree to the selection of substantive law to govern the resolution of their disputes and that such provisions would be upheld as valid and enforceable.[33] Although acknowledging that the Swedish Contracts Act allowed a court to set aside a contract provision that it found unreasonable in light of the circumstances under which the contract was formed or in light of later events, Almelöv stated that the limitation primarily targeted contracts in which one party stood in an inferior position to the other and would not apply to the bunker sales agreement in this case.[34] He concluded that the choice-of-law provision was valid under the law of Sweden.[35]

V&V's expert, Anders Höglund ("Höglund"), took issue with Almelöv's use of the word "parties" to refer both to the parties to the contract and to the parties to the litigation.[36] Höglund offered his opinion that the master and owner of M/V ORUC REIS did not enter into an agreement with Plaintiff.[37] He also testified

---

[32] See id.

[33] See id. pp. 6-7 (unnumbered).

[34] See id. p. 7 (unnumbered).

[35] See id. p. 8 (unnumbered).

[36] See Doc. 20-5, Ex. 5 to V&V's Mot., Expert Legal Opinion of Höglund p. 2 (unnumbered).

[37] See id. p. 3 (unnumbered).

that Sweden would not recognize a maritime lien for bunkers.[38]

Höglund further stated:

> Clauses that are unexpected and burdensome are not always to be accepted. An arbitration clause can be accepted and so can a clause for limitation of liability. But it is certainly highly unlikely if a clause involving foreign law on proceedings as well as unlawful creating of maritime liens, will be accepted as a part of a certain contract and have effect in Sweden. I therefore do not believe that those parts of the terms would be accepted under Swedish law when the terms are incorporated by a reference, if accepted at all.[39]

In BULK JULIANA M/V, the charterer's expert testimony was uncontested. Here, V&V's expert attacked Plaintiff's expert testimony, focusing on the opinion that V&V had not entered an agreement with Plaintiff and on the nonexistence of maritime liens for bunkers under the law of Sweden. Pursuant the Fifth Circuit's analysis, these issues are beyond the scope of consultation of the law of Sweden. The Fifth Circuit was concerned with whether choice-of-law provisions are enforceable under the law of Sweden and whether the method of incorporation met its legal standards. On those points, Höglund's testimony does not raise a fact issue. Thus, the court finds that, based on Almelöv's expert opinion, the choice-of-law provision selecting U.S. law was validly incorporated into the bunker sales contract in this case.

With that issue settled, the Fifth Circuit in BULK JULIANA M/V

---

[38] See id. p. 5 (unnumbered).

[39] Id. p. 6.

directs this court to conclude that Copenship had authority to bind the M/V ORUC REIS in rem for the purchase of bunkers and the lien is enforceable in this court. Accordingly, the court upholds Plaintiff's maritime lien on the M/V ORUC REIS in the amount of $222,378.98, the unpaid cost of bunkers, plus interest. Plaintiff is entitled to judgment as a matter of law on its verified complaint.

Because the court recommends that summary judgment be entered in Plaintiff's favor, upholding the maritime lien against M/V ORUC REIS and resolving the case in its entirety, V&V's motion to dismiss based on forum non conveniens will be rendered moot if this Memorandum and Recommendation is adopted.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that V&V's motion be **DENIED** and Plaintiff's motion be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such

objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 25th day of August, 2016.

_____
U.S. MAGISTRATE JUDGE